[No. 10075.   Department One.   April 13, 1912.]

O. J. INGALLS, *Respondent,* v. LESLER BEALL et al., *Appellants.*[1]

LANDLORD AND TENANT—BREACH OF COVENANT—DAMAGES—MEASURE—PLEADING AND PROOF. The measure of the lessee's damages for breach of covenant to erect a building being the diminished market rental value of the premises, the same may be recovered under an allegation of general damages without pleading the same as special damages.

SAME—DUTY TO MITIGATE DAMAGES. Upon breach of the landlord's covenant to complete a building on the leased premises, the tenant cannot be required to mitigate his damages by performing the covenant.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered July 26, 1911, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for breach of covenant. Affirmed.

*W. C. Meyer,* for appellants.

*George M. Nethercutt,* for respondent.

PARKER, J.—This is an action for the recovery of damages, claimed by the plaintiff to have resulted to him from the failure of the defendants to perform a covenant contained

[1]Reported in 122 Pac. 1063.

in a lease made by them to him of property in Spokane. A trial before the court resulted in findings and judgment in favor of the plaintiff awarding him damages, and also denying reformation of the lease as prayed for by the defendants. From this disposition of the cause, the defendants have appealed.

On August 30, 1909, appellants leased to respondent certain lots in Spokane for the term of ten years, at the monthly rental of $30, payable monthly in advance. The lease contained no restrictions whatever upon the use of the property by the respondent. The property had upon it two small buildings, and a foundation upon which the construction of another somewhat larger building was contemplated. The covenant in the lease here involved relates to the construction of the building upon this foundation, and reads as follows:

"First parties agree to finish in a good, first-class, workmanlike manner and suitable for occupation, for warehouse purposes, the building on said property, the basement of which is now thereon of the size of 30x40 feet and 14 foot stud, properly covering same with good and substantial roofing."

The premises had been used by appellants for some time in conducting their fuel business, and it was known that respondent contemplated using them for a similar purpose.

Respondent alleges in his complaint, in substance, that appellants have failed to erect the building as agreed by the covenant above quoted; that immediately after the execution of the lease and his going into the possession of the premises, he demanded of appellants that they erect the building as agreed, and repeatedly thereafter made such demand; that he has complied with all the terms of the lease upon his part, paying the rent at the times agreed upon, but under protest; that he has in no manner released appellants from their obligation to construct the building; and that by reason of their failure to construct the building, he has been damaged in

the sum of $1,000. There are other facts alleged in the complaint indicating an attempt on the part of respondent to allege special damages consisting of injury to his business and loss of profits therein, because the failure to construct the building prevented him from successfully carrying on a feed business in connection with his fuel business. Appellants' answer consists principally of affirmative allegations showing mutual mistake in omitting from the terms of the written lease a provision prohibiting respondent from carrying on a feed business upon the premises. They prayed for reformation of the lease accordingly, and that respondent take nothing by the action. The cause proceeded to trial with the pleadings in this condition. There had been no challenge by motion or demurrer to the sufficiency of the complaint.

At the beginning of the trial, counsel for appellants announced to the court, in substance, that he would object to the introduction of any evidence of loss of profits or injury to respondent's business, because no foundation therefor was laid in the complaint. The position thus taken by counsel was evidently rested upon the theory that such damages were special and had not been sufficiently pleaded in the complaint. We will adopt this view of counsel for appellants, since there is no necessity of determining the sufficiency of the complaint to admit evidence of such special damages, for the nature of the evidence introduced in behalf of respondent we think clearly shows that his counsel was not relying upon proof of such special damages.

Practically all of the evidence offered in behalf of respondent bearing upon the question of the measure of damages related to the diminished rental value of the premises by reason of the failure of the appellants to construct the building. There was some evidence tending to show that respondent's business was to some extent interfered with by not having this building, but there was no evidence worthy of consideration showing any measure of loss of profits. The trial court

awarded damages measured by the diminished rental value of the premises by reason of the absence of the building, awarding respondent $18 per month computed from the time the building should have been constructed under the lease and respondent's demand therefor up until the time of the trial. It has seemed necessary to us to say this much relative to counsel's objection to the cause being tried upon the theory that respondent was entitled to special damages measured by loss of profits, in order to remove all controversy over those allegations of the complaint which might seem to constitute an effort to bring that question into the case and which counsel for appellants insists are not sufficient for that purpose. We think enough has been said to show that counsel on both sides have construed the issues as involving general damages only.

There is no question as to the terms of the written lease, the payment of rent in compliance therewith, nor of the failure of appellants to construct the building. Testimony was offered in behalf of respondent to show the diminished rental value of the premises by reason of appellants' failure to construct the building. This was shown by witnesses who were more or less familiar with rental values, and by testimony which we think was ample to support the court's conclusions. This testimony was, however, introduced over the objections of counsel for appellants, who now argues in support of such objection, as we understand him, that the diminished rental value of the premises is not a proper measure of damages in this case because not pleaded on the complaint. His argument seems to proceed upon the theory that such damages are special, and that, therefore, the complaint must give some notice that the diminished rental value will be claimed as the measure of damages. Now it could hardly be seriously argued that the complaint does not state sufficient facts to admit proof of general damages resulting from the failure of appellants to construct the building. It is, of course, plain from the allegations of the complaint, as

we have seen, that respondent lost the use of the building by
the failure of appellants to construct it according to their
covenant. Clearly the law would contemplate that some dam-
ages would result to respondent by this breach of the cove-
nant. What, then, is the measure of such damages in the
absence of the pleading of any special circumstances showing
the measure of damages? In 3 Sutherland on Damages,
§ 872, it is said:

"On the breach of the landlord's covenant to repair, the
tenant may abandon the premises if, by reason of want of
repair, they have become untenantable; he may make the re-
pairs and deduct the cost from the rent, though in some of the
cases cited the qualification is added that the cost of repairs
must not be large; he may occupy the premises without re-
pair, and recoup his damages in an action for the rent, or
he may sue for damages for breach of such covenant. In the
latter action the lessor will be chargeable with the difference
between the rent to be paid and the rental value."

In 24 Cyc. 922, the rule is stated in the text thus:

"The measure of the lessee's damages for the breach of the
covenant in a lease is usually the difference between the
market rental value of the premises and the rent agreed to
be paid for the same."

See, also, 18 Am. & Eng. Ency. Law (2d ed.), p. 233; *Hex-
ter v. Knox*, 63 N. Y. 561; *Kellogg v. Malick*, 125 Wis. 239,
103 N. W. 1116.

In the last cited case, referring to the rule of damages laid
down in the leading case of *Hadley v. Baxendale*, 9 Exch.
341, the supreme court of Wisconsin, at page 246, said:

"Under this rule the damages which can be recovered for
breach of contract are such as may fairly and reasonably
be considered as either arising naturally—that is, according
to the usual course of things—from such breach, or such as
may reasonably be supposed to have been in contemplation
by both parties at the time they made the contract as the
result of the breach of it. In the absence of circumstances,
special or otherwise, brought home to the knowledge of the
lessor, therefore, the damages which may be recovered in case

of breach of the covenants of a lease respecting the condition of the leased premises is the difference between the value of the use of the premises in the condition as contracted to be, and the rental value in their actual condition."

These authorities, it seems to us, render it clear that, where facts are pleaded as in this complaint, the diminished rental value of the premises, caused by failure of appellants to perform their covenant for the construction of the building, is a proper measure of damages. Indeed, it is difficult to see what other measure of general damages there could be.

The testimony introduced tending to show the diminished rental value consisted largely of statements of witnesses as to the rental value of the building agreed to be constructed by appellants upon the land, if the same had been constructed. Some contention is made that this was not the proper method of proof, that it is not the rental value of the building, but the difference between the rental value of the entire premises with the building and without the building. We think, however, that the testimony produced amounts to the same thing. If this building would have been worth $18 per month, as the trial court found, it would seem to follow as a matter of course that the absence of such building would diminish the rental value of the whole that much. We are of the opinion that the trial court was not in error in receiving this evidence and measuring respondent's damages accordingly.

Counsel for appellants offered in mitigation of respondent's damages to prove that the building to be erected would cost not exceeding $200. This offer of proof was excluded upon objection of counsel for respondent. It is argued that this evidence was admissible under the general rule which requires reasonable exertions on the part of a party damaged to prevent the same, and if he allows the damages to be unnecessarily enhanced, the loss to that extent will fall upon himself. There seems to be some authority making this rule in some measure applicable to the relation existing between landlord and tenant, especially where the expendi-

ture called for to prevent the damage is small. We think, however, that the rule does not go to the extent of requiring a tenant to make an expenditure of a considerable sum to supply something expressly covenanted to be supplied by the landlord. It hardly seems possible that respondent in this case was required to advance $200 or more for the purpose of fulfilling appellants' express covenant to construct the building.

In 3 Sutherland on Damages at § 871, it is said:

"The general rule which bars a plaintiff from recovering damages which would not have been sustained had he exercised due diligence to mitigate them has some application to actions to recover for wrongful eviction, though its scope is more restricted in actions between landlord and tenant than in many other classes of actions. The tenant may not recover for damages which result to his personal property through his own negligence. A tenant who occupies premises so situated that they may be heated without interfering with the rights of other persons, on the failure of the landlord to heat them, should cause the heating to be done, and he may recover the expense necessarily incurred in so doing. If it be practicable to so heat the premises the tenant cannot recover damages on account of the landlord's default unless he avails himself of the facilities within his reach. This appears to be an extreme application of the doctrine, and to come within language employed by the Minnesota court: Where a party to a contract is exposed to injury by neglect of the other party to perform the covenants on his part, the injured party has no right to aggravate the damages, either by affirmative acts, or by the neglect of ordinary care and reasonable precaution to avert or lessen the injury. We have found no case, however, which holds—and the proposition is unreasonable—that the duty of ordinary prudence to lessen the injury extends so far as to require him to perform the covenants of the other party. The tenant is not bound to forego any of his rights under the contract for the advantage of the landlord."

See, also, *Cargill v. Thompson*, 57 Minn. 534, 59 N. W. 638; *Ross v. Stockwell*, 19 Ind. App. 86, 49 N. E. 50; *Bostwick v. Losey*, 67 Mich. 554, 35 N. W. 246; *Mason v. Howes*,

122 Mich. 329, 81 N. W. 111; *McCardell v. Williams,* 19 R. I. 701, 36 Atl. 719.

Upon the question of the reformation of the lease prayed for by appellants, the evidence was wholly insufficient to warrant any decree of that nature in their favor, so the trial court was not in error in denying such relief. The judgment is affirmed.

DUNBAR, C. J., and CROW, J., concur.